UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| THE PHOENIX INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>ASSOCIATION CASUALTY INSURANCE COMPANY,<br><br>Defendant. | 4:22-CV-04153-RAL<br><br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff The Phoenix Insurance Company ("Phoenix") sued Defendant Association Casualty Insurance Company ("ACIC") for declaratory judgment and attorney's fees and costs related to defending First Rate Excavate, Inc. ("First Rate"), a named insured under a commercial insurance policy between Phoenix and First Rate and an additional insured under an insurance contract between ACIC and Traffic Solutions, Inc. ("Traffic Solutions"). Doc. 1 ¶¶ 9–11, a–b. First Rate and Traffic Solutions are named third-party defendants in a state personal injury case. Doc. 22-1 at 19–30. Phoenix moved for partial summary judgment seeking a declaration that ACIC has a duty to defend First Rate in the state case, Doc. 23, and ACIC filed its cross motion for summary judgment, Doc. 30, arguing the duty to defend does not extend to the underlying claims in the state case, Doc. 32 at 13–14.

I. **Facts Not Subject to Genuine Dispute**

The South Dakota Department of Transportation hired First Rate as the contractor for its Holly Boulevard Improvements project (the "Project"), which included road construction at the

1

intersection of South Dakota Highway 11 (known as Holly Boulevard as it passes through Brandon, South Dakota) and East Madison Street. Doc. 22-1 at 26–27. First Rate entered into a subcontract with Traffic Solutions (the "Subcontract") for the Project signage. Doc. 22-2 at 6–15. The Subcontract required Traffic Solutions to "furnish and install the traffic control devices and pavement markings as detailed in the plans" for the Project, though "[d]aily maintenance and moving of signs and devices" remained First Rate's responsibility. Id. at 7, 12–13. The Subcontract also required Traffic Solutions to "carry at its own expense, obtain and maintain, bodily injury and property damage liability insurance under a comprehensive form" and to "list [First Rate] . . . as an additional insured on a primary noncontributory basis with respect to General Liability, Automobil[e] Liability, Excess/Umbrella Liability." Id. at 8, 14–15.

Traffic Solutions obtained general commercial insurance from ACIC under policy number CMPSD0000002006 for coverage between April 9, 2019, to April 9, 2020 (the "ACIC Policy"). Doc. 24-1 at 6. The ACIC Policy covers, among other things, certain claims of bodily injury occurring during the policy period and caused by an accident. See generally id. As the Subcontract required of Traffic Solutions, the ACIC Policy names First Rate as an additional insured, id. at 60, 7, and defines an additional insured and the coverage therefor as

> Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. . . .
>
> [The organization] is an additional insured only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by . . . [y]our acts or omissions . . . in the performance of your ongoing operations for the additional insured.

Id. at 70. Under the ACIC Policy, the insurance provided to additional insured parties is primary and noncontributory when the following two conditions are met:

> a. The additional insured is a Named Insured under such other insurance; and

    b. You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

Id. at 71.

In addition to being named as an additional insured on the ACIC Policy, First Rate is the named insured under a Phoenix policy bearing policy number DT-CO-3H289264-PHX-19 running from March 1, 2019, to March 1, 2020 (the "Phoenix Policy"). Doc. 22-1 at 37–38. The Phoenix Policy applies to certain claims of bodily injury arising during the policy term and caused by an accident. See generally id. at 37–173. The Phoenix Policy expressly states that the insurance coverage it provides "is excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is added as an additional insured under any other policy, including any umbrella or excess policy." Id. at 89.

According to the Amended Complaint in the state case, on August 28, 2019, during the Project's construction, Mark Stephens was driving his motorcycle southbound on South Dakota Highway 11, approaching the "T" intersection with East Madison Street. Doc. 1-1 ¶¶ 26, 30. Traditionally traffic on East Madison has a stop sign and traffic of Highway 11, where the speed limit is 55 miles per hour in the area, has the right-of-way. Id. ¶¶ 9–10. Due to the construction, temporary stop signs had been placed for traffic on Highway 11 to stop at the intersection with Madison Street, and portable message boards had been placed to warn traffic on Highway 11 of the upcoming stop. Id. ¶¶ 16–17, 20, 24. According to the Complaint, on the day of the accident, the portable sign warning northbound traffic alternated between "Stop Sign Ahead" and "Stop Ahead," while the portable sign meant to warn southbound traffic like Stephens "was not on and did not display any warning messages." Id. ¶¶ 28–29. Further, "vehicles obscured [Stephens's] ability to see the temporary stop signs on the far east and far west side of the road." Id. ¶ 31.

3

Stephens and his motorcycle, travelling close to 55 miles per hour through the intersection, collided with a left-turning vehicle, and he sustained various serious injuries. Id. ¶¶ 33, 36–40.

Stephens sued the Secretary of Transportation of the South Dakota Department of Transportation and others associated with the DOT (collectively, the "DOT"), alleging negligence related to the traffic control devices used in the Project (the "Underlying Action"), Doc. 22-1 at 15–17. The DOT filed a third-party complaint against First Rate and Traffic Solutions[1] in the Underlying Action. Id. at 19–30. The third-party complaint alleged that First Rate owed and breached "a duty to exercise due care to ensure a reasonable and appropriate detour and traffic control plan for the Project." Id. at 26, 28. The third-party complaint alleged that Traffic Solutions owed and breached "a duty to exercise due care and ensure the proper placement and maintenance of any necessary stop signs or advanced warning signs." Id. at 27, 29. Phoenix tendered the defense and indemnification of First Rate to ACIC by letter dated November 5, 2020. Doc. 22-3. ACIC refused to provide a defense, Doc. 22-4, and Phoenix has been defending First Rate in the Underlying Action. First Rate initiated this action for declaratory judgment and to recover attorney's fees and costs incurred in First Rate's defense. Doc. 1, Doc. 22 ¶ 5. The insurance companies now dispute who must pay for First Rate's defense under the policies, and each has moved for summary judgment on the duty to defend First Rate.

## II.     Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); McManemy v. Tierney, 970 F.3d

---

[1] The DOT also named Stockwell Engineers, Inc., the Project engineer, in its third-party complaint. Doc. 22-1.

4

1034, 1037 (8th Cir. 2020). Rule 56(a) places the burden on the moving party to show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmoving party must establish that a material fact is genuinely disputed by either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1)(A), (B); see also Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145–46 (8th Cir. 2012) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In ruling on a motion for summary judgment, the facts and inferences fairly drawn from those facts are "viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citation omitted); see also Intel Corp. Inv. Pol'y Comm. v. Sulyma, 589 U.S. 178, 190 (2020). There appears to be no genuine dispute as to any material fact here, leaving a legal question of whether the allegations in the Underlying Action trigger a duty to defend First Rate under the ACIC Policy. Both parties seek summary judgment on that issue.

### III. Analysis

**A. First Rate Is an Additional Insured Under the ACIC Policy**

South Dakota law governs non-procedural issues in this diversity jurisdiction case. See Swenson v. State Farm Fire & Cas. Co., 891 F. Supp. 2d 1101, 1107 (D.S.D. 2012) ("State law governs the interpretation of insurance policies when federal jurisdiction is based on diversity of citizenship." (quoting Secura Ins. v. Horizon Plumbing, Inc., 670 F.3d 857, 861 (8th Cir. 2012))). South Dakota law requires interpreting an insurance contract "according to the entirety of its terms and conditions" and "according to its plain and ordinary meaning." State Farm Mut. Auto. Ins. Co. v. Grunewaldt, 998 N.W.2d 361, 365, 367 (S.D. 2023) (cleaned up and citation omitted). Such

interpretation, which "includes determining whether an insurance contract is ambiguous," is a question of law for the court. Ass Kickin Ranch, LLC v. N. Star Mut. Ins. Co., 822 N.W.2d 724, 726 (S.D. 2012) (citation omitted). A policy is ambiguous if there is "a genuine uncertainty as to which of two or more meanings is correct," Cornelius v. Nat'l Cas. Co., 813 N.W.2d 167, 169 (S.D. 2012) (cleaned up and citations omitted), but "[t]he fact that the parties differ as to the contract's interpretation does not create an ambiguity," Heitmann v. Am. Family Mut. Ins. Co., 883 N.W.2d 506, 509 (S.D. 2016) (citation omitted).

Here, the contract unambiguously identifies First Rate as an additional insured entitled to primary and noncontributory insurance coverage for certain claims under the ACIC Policy. The ACIC Policy defines additional insured parties as

> Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy . . . .

Doc. 24-1 at 70. First Rate and Traffic Solutions "agreed in [the Subcontract] that [First Rate] be added as an additional insured on [Traffic Solutions'] policy." See id. (ACIC Policy defining additional insureds); Doc. 22-2 at 8, 15 (Subcontract provision requiring Traffic Solutions to "list" First Rate "as an additional insured"). First Rate is thus an additional insured under the ACIC Policy. Indeed, the ACIC Policy specifically names First Rate as an additional insured party. Doc. 24-1 at 60 (ACIC Policy endorsement designating First Rate as an additional insured); id. at 7 (ACIC Policy Additional Interest Schedule identifying First Rate as an additional insured).

The ACIC Policy's plain language shows that ACIC's coverage is primary and noncontributory. The ACIC Policy provides primary and noncontributory coverage when "[t]he additional insured is a Named Insured under such other insurance" and the named insured on the ACIC Policy "ha[s] agreed in writing in a contract or agreement that this insurance would be

6

primary and would not seek contribution from any other insurance available to the additional insured." Id. at 71. Of course, First Rate "is a Named Insured under" the Phoenix Policy, Doc. 22-1 at 37–38, and Traffic Solutions "ha[s] agreed in writing in [the Subcontract] that [the ACIC Policy] would be primary and would not seek contribution from [the Phoenix Policy]," see Doc. 22-2 at 8, 15 (Subcontract provision requiring Traffic Solutions to "list" First Rate "as an additional insured on a primary noncontributory basis"). This provision is also consistent with the terms of the Phoenix Policy, which specifically states its coverage "is excess over any of the other insurance . . . available to the insured when the insured is added as an additional insured under any other policy." Doc. 22-1 at 89; see also Am. Concept Ins. Co. v. Certain Underwriters at Lloyds of London, 467 N.W.2d 480, 482 (S.D. 1991) (enforcing excess insurance clause in dispute between insurers over who has primary coverage). For these reasons, ACIC must provide First Rate primary and noncontributory insurance coverage for covered claims.

### B. The Claim Alleged Triggers ACIC's Duty to Defend

ACIC's arguments against its duty to defend assert that the pleadings or circumstances in the Underlying Action do not present covered claims. Additional insured coverage under the ACIC Policy applies only with respect to "liability for 'bodily injury' . . . caused, in whole or in part, by [Traffic Solutions'] acts or omissions . . . [i]n the performance of [its] ongoing operations" for First Rate. Doc. 24-1 at 60; see also id. at 70. Under the Subcontract, Traffic Solutions' obligations to First Rate include "furnish[ing] and install[ing] the traffic control devices and pavement markings as detailed in the plans" for the Project. Doc. 22-2 at 7, 12–13.

In determining whether a party has a duty to defend in a particular case, the Supreme Court of South Dakota has "adopt[ed] the view that if it is clear or arguably appears from the face of the pleadings in the action against the insured that the alleged claim, if true, falls within policy

coverage, the insurer must defend." Hawkeye-Security Ins. Co. v. Clifford, 366 N.W.2d 489, 491 (S.D. 1985); see also Grunewaldt, 998 N.W.2d at 364 (stating that the court "must *only* look to the complaint and other record evidence to determine whether the alleged claim, *if true*, falls within the policy coverage" (citation omitted)). The duty to defend is triggered "even though the pleadings are ambiguous or reveal other claims not covered in the policy, and notwithstanding that extraneous facts indicate the claim is false, groundless, or even fraudulent." Hawkeye-Security, 366 N.W.2d at 491–92 (footnote omitted). When properly alleged, an insurer may only avoid the duty to defend by showing "the claim clearly falls outside of the policy coverages and that there is no duty to defend," but any doubt about "whether the claim against the insured arguably falls within the policy coverage . . . must be resolved in favor of the insured." Grunewaldt, 998 N.W.2d at 365 (cleaned up and citations omitted).

The pleadings in the Underlying Action sufficiently allege that Stephens sustained "'bodily injury' . . . caused, in whole or in part," by alleged "acts or omissions" of Traffic Solutions in its performance of the Subcontract. Doc. 24-1 at 60. After all, the Amended Complaint in the Underlying Action alleges that "Plaintiff sustained injuries from the collision," including fractures and abrasions with medical expenses exceeding $107,000, Doc. 22-1 at 14, and that negligence through "[f]ailing to install, maintain or control its temporary traffic control devices in a safe and reasonable manner" caused the collision, id. at 17. The DOT's third-party complaint alleges "Traffic Solutions owed Plaintiff a duty to exercise due care and ensure the proper placement and maintenance of any necessary stop signs or advanced warning signs," breached that duty, and is jointly and severally liable with First Rate. Id. at 27, 29. To be clear, the Subcontract describes Traffic Solutions' responsibilities as "furnish[ing] and install[ing] the traffic control devices" but puts responsibility for "maintenance and moving of signs and devices" on First Rate. Doc. 22-2

8

at 7, 12–13. Even disregarding that the third-party complaint pleads that Traffic Solutions had a duty broader than the Subcontract states, there is plenty in the pleadings in the Underlying Action to allege a "claim [that], if true, falls within policy coverage," triggering ACIC's duty to defend. Hawkeye-Security, 366 N.W.2d at 491. The Amended Complaint and third-party complaint plainly allege that at least in part, Stephens' bodily injuries arose from negligence in installing traffic control devices, which was Traffic Solutions' responsibility under the Subcontract.

ACIC argues that claims in the Underlying Action are not covered by the policy because no liability assessed to First Rate would be because of Traffic Solutions' operations on the Project or under the Subcontract. Doc. 32 at 13–14. ACIC emphasizes that "Traffic Solutions was sued for its own alleged negligence, [and] First Rate Excavate for its own alleged negligence," Id. at 13, which would mean that First Rate would not incur any liability "caused, in whole or in part, by [Traffic Solutions'] acts or omissions . . . [i]n the performance of [its] ongoing operations for [First Rate]," Doc. 24-1 at 70. This argument is unavailing. Even if the Third-Party Complaint separately alleges claims of negligence against First Rate and Traffic Solutions, the DOT alleges First Rate and Traffic Solutions are "jointly and severally liable" for the claims against each, which could allow the DOT to recover damages from First Rate for Traffic Solutions' actions related to signage on the Project. Doc. 22-1 at 29. At minimum, this "joint and severable liability" language "arguably" demonstrates that at least some or part of the alleged claim is covered under the ACIC Policy. See Hawkeye-Security, 366 N.W.2d at 491–92.

The pleadings in the Underlying Action have alleged facts triggering ACIC's duty to defend its additional insured First Rate, and ACIC has not shown the claim to be clearly not covered under the ACIC Policy. It thus "clear[ly] or arguably appears from the face of the pleadings in the action against the insured that the alleged claim [of negligence], if true, falls within

9

policy coverage." See id. at 491. Therefore, ACIC has a duty to defend First Rate in the Underlying Action.

## IV. Conclusion

For the reasons explained, it is

ORDERED that Plaintiff's Motion for Summary Judgment, Doc. 23, is granted in part to the extent that a declaratory judgment enters that ACIC has a duty to defend First Rate on the third-party complaint filed in the Underlying Action by the DOT. It is further

ORDERED that ACIC will owe Phoenix its reasonable attorney's fees and costs incurred in defending First Rate in the Underlying Action. It is finally

ORDERED that Defendant's Motion for Summary Judgment, Doc. 30, is denied.

DATED this 25th day of July, 2024.

BY THE COURT:

/s/ Roberto A. Lange

ROBERTO A. LANGE
CHIEF JUDGE